UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GREGORY B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02737-MJD-JPH |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of | ) | |
| the Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Claimant Gregory B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.  See 42 U.S.C. §§ 423(d), 1382.  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I. Background

Claimant applied for DIB and SSI in July 2017, alleging an onset of disability as of April 30, 2016.  [Dkt. 10-5 at 2, 7.]  Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Kathleen Kadlec

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the Social Security Administration on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named Acting Commissioner of the Social Security Administration.

("ALJ") on January 16, 2020.  [Dkt. 10-2 at 33.]   On February 5, 2020, ALJ Kadlec issued her

determination that Claimant was not disabled.  *Id.* at 16.  The Appeals Council then denied

Claimant's request for review on August 24, 2020.  *Id.* at 2.  Claimant timely filed his Complaint

on October 22, 2020, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to  42 U.S.C. §

423.[2]  Disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the

Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the

claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not

have a "severe" impairment, one that significantly limits his ability to perform basic work

activities, he is not disabled; (3) if the claimant's impairment or combination of impairments

meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt.

404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at

step three, and is able to perform his past relevant work, he is not disabled; and (5) if the

claimant is not found to be disabled at step three, cannot perform his past relevant work, but can

perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520.  Before

continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC")

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all
respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that
apply to DIB.

by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

## III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of April 30, 2016. [Dkt. 10-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "affective disorder, characterized variously as depressive or bipolar disorder, with psychotic features." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 19. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: He can occasionally climb ladders, ropes, or scaffolds.
> He can never work at unprotected heights. He can occasionally work around

3

moving mechanical parts and operate a motor vehicle.  He can tolerate a work environment with moderate noise.  He can understand, remember, and carry out simple, routine, repetitive tasks and make simple work-related decisions.  He can occasionally interact with supervisors and coworkers, and can never interact with the public.

*Id.* at 20-21.

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period.  *Id*. at 24.  At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy.  *Id*. at 25.  Accordingly, the ALJ concluded Claimant was not disabled.  *Id.* at 26.

### IV. Discussion

Claimant argues that the ALJ erred in two respects, each of which is addressed, in turn, below.

### A.  Subjective Symptoms

Claimant first argues that the ALJ failed to apply SSR 16-3p properly in assessing Claimant's subjective symptoms and that this was an error of law that requires remand.  The Court disagrees.

Pursuant to Social Security Ruling 16-3p, "[the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *3.  Once established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*  Social Security Ruling 16-3p, which rescinded Social Security Ruling 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not his

credibility. *Id.* at *2. The "change in wording is meant to clarify that administrative law judges

aren't in the business of impeaching claimants' character; obviously administrative law judges

will continue to assess the credibility of [symptom] *assertions* by applicants, especially as such

assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v.*

*Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). At stage two of the Social

Security Ruling 16-3p analysis, the ALJ considers the claimant's alleged symptoms in light of the

claimant's daily activities; the location, duration, frequency, and intensity of the symptoms;

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of

medication; treatment other than medication for relief of symptoms; and other measures taken to

relieve symptoms. 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ acknowledged Claimant's testimony regarding his subjective symptoms,

[Dkt. 10-2 at 20], and expressly recognized—and cited to—"medical evidence that is consistent

with the claimant's allegations" and the treatment Claimant receives for his symptoms. *Id.* at 22.

The ALJ then concluded:

> All of the above evidence demonstrates that the claimant's impairments limits [sic]
> his ability to work. However, the record overall does not establish that the
> claimant's symptoms are so intractable and his limitations so extreme that he is
> incapable of all manner of work. In fact, the evidence demonstrates that the
> claimant's treatment is quite effective.

*Id.* The ALJ then provided a thorough and accurate summary of the record of evidence

regarding Claimant's reports to his mental health professionals about his symptoms and the

efficacy of his medication during the relevant time period. Based on these records, the ALJ

found that

> the medical evidence demonstrates that the claimant's symptoms respond very
> well to medication. His mood is stable. He is able to interact appropriately, think
> rationally, and independently accomplish his daily living activities. Such

5

evidence will not support a determination that the claimant is mentally incapacitated.

*Id.* at 23. The ALJ then thoroughly and accurately summarized the opinion evidence of record, including that of Claimant's treating mental health counselor, Nicolas Fuller, LMHC, and the state agency psychologists, Amy Johnson, Ph.D., and Kenneth Neville, Ph.D., finding them to be persuasive and well-supported. However, based on Claimant's testimony and the record as a whole, the ALJ "assessed a slightly more restrictive residual functional capacity" than Fuller and the state consultants.

In support of his argument that the ALJ did not properly apply SSR 16-3p, Claimant points to various medical records for the proposition that "[w]hile it is true that several medical visits document [Claimant's] reports that he is doing better on medication, but [sic] he still consistently reported that while doing better he has serious issues." [Dkt. 14 at 18.] Claimant then argues that "while [Claimant's] medications did improve his symptoms significantly, it does not mean he is capable of functioning in a full time job."[3] *Id.*

The relevant portions of the medical records cited by Claimant are as follow:

---

[3] Claimant also argues that the ALJ placed "undue weight" on Claimant's daily activities and failed to "include the caveats associated with these activities," such as the fact that he needs to be reminded to take his medication and do his chores and that he "has difficulty leaving the house alone and usually wants his grandmother or someone else with him." [Dkt. 14 at 19.] However, the ALJ did not commit the common error of equating Claimant's daily activities with the ability to work full-time; rather, the ALJ simply noted that Claimant's "statements about his daily activities accord with his treatment records," citing to various statements in the record regarding those activities. [Dkt. 10-2 at 21-22.] This fulfilled the ALJ's obligation under Social Security Ruling 16-3p to consider Claimant's daily activities in assessing his subjective symptoms.

- Treating psychiatrist Arman Siddiqui, M.D, note from May 9, 2017:

**CHIEF COMPLAINT**:
"I am having **anxiety**" Patient was seen by me the first time, he saw no Nurse practitioner Tina Baxter, Note was reviewed.

HISTORY OF PRESENTING COMPLAINTS:
Patient reports he is having **anxiety** and his skilled therapist reported that he should make an earlier appointment with this writer. Patient reported he feels anxious, and also paranoid hat people are watching him, Previous records were reviewed and he was hospitalized twice in 2015 at community North Hospital because of bipolar mania and psychosis, he was thinking the TV is giving him messages. He denies adamantly any **suicidal** or **homicidal** thoughts, he reports he is sleeping good, he used to be on Zyprexa which helped him with his mood and paranoia already gained 30 pounds on it so it was discontinued he is currently on Invega Sustenna 234 mg IM every month. He denies feeling depressed, energy level and motivation is fine, appetite is good. No overt delusions, no auditory or visual **hallucinations**.

**Mental Status Examination**:
Alert, Oriented ×3, Speech: normal rate rhythm and volume, **Gait**: Normal, Mood: **Anxiety**, Affect: Mood congruent, anxious, thought process: Linear and organized, thought content: Denies Auditory or visual **hallucinations**, paranoid ideations, r memory grossly intact recent and remote Denies **suicidal** or **homicidal** ideations intent or plan, insight fair judgment fair

**ASSESSMENT**:
Patient did better as he reported that Zyprexa along with Invega assist Hannah however he gained weight, he used to be on Seroquel which helped him and he did not gain weight on it, Treatment options were discussed including Seroquel and Saphris, at this time Seroquel 100 mg at night will be started along with 25 mg in the morning 25 mg in the afternoon to help with **anxiety** as an off label use

[Dkt. 10-7 at 62.]

- Dr. Siddiqui note from May 30, 2017:

**CHIEF COMPLAINT**:
"I am doing good" Medication management session

HISTORY OF PRESENTING COMPLAINTS:
Patient reports he has been doing better on the current medication regimen his **anxiety** is better he is not feeling drowsy on Seroquel 25 mg 2 times a day, He denies having any **suicidal** thoughts, denies having any visual **hallucinations** but sometime he reports he gets paranoid that people are after him watching him, Sometimes he has some auditory **hallucinations** telling him that people are after him but they are not as intense he reports his mood has been much better, sleeping good and, appetite is good. He denies having any thoughts of harming anybody else, no alcohol Ann reports he recently has not done any illicit drugs.

**Mental Status Examination**:
Alert, No abnormal movements noted, **Gait**: Normal, Mood: "good", Affect: Reactive and full range, thought process: Linear and organized, thought content: Denies auditory or visual **hallucinations**, Denies **suicidal** ideations intent  or plan, no **homicidal** ideations reported, insight fair judgment fair memory grossly intact recent and remote

**ASSESSMENT**:
Patient was doing very well on the current medication regimen, no side effects of the medication he is tolerating them very well, no changes in the medication will be done today. Risk and benefit and side effect of the medication including but not limited to metabolic syndrome, weight gain were discussed and he was recommended to blood work and he agreed.

*Id.* at 61.

7

- Dr. Siddiqui note from August 14, 2017:

**HISTORY OF PRESENTING COMPLAINTS:**
Patient reports his mood has been up and down but overall better, no suicidal thoughts. He denies drinking alcohol or using any illicit drugs. He denies feeling depressed, denies having thoughts of harming anybody else.  He reports Some time or visual hallucinations but no command auditory hallucinations,Paranoia is much better. He denies any side effects of the medication, no muscle twitching, no muscle spasms. He denies drinking alcohol or using any illicit drugs.

**Mental Status Examination:**
Alert, No abnormal movements noted, Gait: Normal, Mood: "Up-and-down", Affect: Reactive and full range, bright, thought process: Linear and organized, thought content: Sometime auditory hallucinations, no command auditory hallucinationsor visual hallucinations, Denies suicidal ideations intent  or plan, no homicidal ideations reported, insight fair judgment fair memory grossly intact recent and remote

**ASSESSMENT:**
Patient is doing well and tolerating his meds, recommended to maintain sobriety. Risks and benefits and side effects discussed and Depakote can cause liver injury and it was discussed and he agreed to the recommendation to do the blood work. No changes in meds on this visit.

*Id.* at 85.

- Dr. Siddiqui's note from November 8, 2017:

**CHIEF COMPLAINT**:
"Some days are good and other days I am down" Medication management session

HISTORY OF PRESENTING COMPLAINTS:
Patient reports he has been doing better since Seroquel was started with his **depression** but some days are still bad, he is sleeping better also when waking up multiple times during the daytime,He denies adamantly any **suicidal** ideations intent or plan. He denies having any EPS symptoms no muscle twitching no muscle spasms.He denies drinking alcohol or using any illicit drugs. No manic or hypomanic symptoms.

**Mental Status Examination**:
Alert, Oriented ×3, No abnormal movements noted, **Gait**: Normal, Mood: "better", Affect: Full range, thought process: Linear and organized, thought content: denies auditory or visual **hallucinations**, Denies **suicidal** or **homicidal** ideations, intent or plan, memory grossly intact recent and remote,, insight and judgment fair

**ASSESSMENT**:
The patient has been tolerating the medications well Seroquel XR has helped, It will be increased to 200 mg at night.

*Id.* at 260.

- Treatment Plan Review by Linda Gotkin, OBHP, dated May 23, 2018:

4

**Depression:** .
"Not so much, "4" on a scale of 1-10 with 10 being the worst"

**Feedback provided by:** Client , Other (specify in notes)
SDS-CL scored 9 on PHQ-9 so his own assessment was close to the official one. CL doesn't believe this is

something he needs to work on right now.

**Psychosis:** .
"I always hear voices, sometimes they tell me to do things but I don't always act on them" "They may say drink a beer or something and I do"

**Feedback provided by:** Client, Other (specify in notes)
SDS-CL said the voices have been with him awhile so he knows how to tune out bad things and is learning to ignore commands to do things he doesn't think are the best for him.

**Anxiety:** .
"I've been having more anxiety, "7" on a scale of 1-10 with 10 being the worst"

**Feedback provided by:** Client, Other (specify in notes)
SDS-CL was most concerned about anxiety and worrying about finances, an upcoming trip, and his SSI appeal. This is an area CL wants to focus on during skills visits.

**Anger:** .
"Sometimes I have anger. Normally, it's little stuff I can control it now"

**Feedback provided by:** Client, Other (specify in notes)
SDS-CL explained that the little stuff is like when he spills something or one of the dog's has an accident he has to clean up; CL's anger sounds more like frustration that he doesn't act on.

**Activities of Daily Living/Independent Living Skills:** .
"I can do things around the house and would be able to handle things on my own. I am a good cook"

**Feedback provided by:** Client, Other (specify in notes)
SDS-I do not have concerns in this area for CL.

**Sleep:** .
"I have trouble falling asleep then I have trouble getting up. Sleep about 8-10 hours"

**Feedback provided by:** Client, Other (specify in notes)
SDS-CL explained that he used to work night shifts and never got over the schedule because he likes staying up until 1 or so.

**Appearance:** Age Appropriate/Stated Age
**Speech:** Normal
**Activity Level:** Normal range
**Affect:** Appropriate
**Mood:** Happy
**Thought Processes:** Logical, coherent and directed
**Judgement:** Good
**Unusual Behaviors:** Rocking/Toe Walking

[Dkt. 10-8 at 2-4.]

- Dr. Siddiqui's notes from October 8, 2019:

**CHIEF COMPLAINT:**

"I have voices putting me down at times." Medication management session

**HISTORY OF PRESENTING COMPLAINTS:**

Patient continues doing very well and denies having side effects of the meds and none observed in the session. He is still reporting that he is hearing voices but no command auditory hallucinations. He denies feeling sad and denies having suicidal or homicidal ideations, intent or plan. He denies drinking alcohol or denies using illicit drugs. He denies having side effects of the meds and none observed in the session. No EPs, no muscle twitching or muscle spasms. No alcohol or illicit drugs. These voices are more from anxiety.

**Mental Status Examination:**

Alert, O x 3

Speech : Normal rate and rhythm and volume

Gait steady

Mood: "Fine"

Aff Anxious

Thought process: Linear and goal oriented

Thought content: Ah no VH, no SI/HI
denies suicidal or homicidal ideations intent or plan
Insight fair
Judgment fair
memory: grossly intact recent and remote

*Id.* at 34.

- Dr. Siddiqui's notes from November 6, 2019:

**CHIEF COMPLAINT:**

"I am trying to eat better" Medication management session

**HISTORY OF PRESENTING COMPLAINTS:**

Patient reports her grandmother had nasal septal surgery, and his dad has skin cancer. he has not the stressors and he is feeling a little overwhelmed, he denies adamantly any suicidal ideations intent or plan but he reports he gets anxious and thinks about He denies having any auditory or visual hallucinations. He sees therapist Nick Fuller recommended to see him more often. Denies any alcohol or using any illicit drugs. He reports he gets worried about his loved ones. he does report the Zoloft is helping significantly with his depression and came out of depression however he has some racing thoughts and not sleeping well.

772

**Mental Status Examination:**

Alert and oriented

Speech : Normal rate and rhythm and volume

Gait steady

Mood: "okay"

Affect: Anxious

Thought process: Linear and goal oriented

Thought content: denies any auditory or visual hallucinations, no paranoid ideations
SI/HI: denies suicidal or homicidal ideations intent or plan
Insight fair
judgment fair
memory: grossly intact recent and remote

*Id.* at 29-30.

- Dr. Siddiqui's notes from December 5, 2019:

**CHIEF COMPLAINT:**

"TV is talking to me" Medication management session

**HISTORY OF PRESENTING COMPLAINTS:**

Patient reports TV is talking to him and about a month ago he went to Airport and was thinking to find GOD and wanted to jump from the lodge but he did not do it. Denies suicidal or homicidal thoughts currently, denies adamantly any intent or plan to kill himself or kill anybody else. He reported he is still hearing voices from the TV but no command auditory hallucinations. He is taking Saphris 5 mg at night, he wants to go back on Invega Sustenna monthly injection rather than three-month injection. he denies any muscle twitching, muscle spasms. He denies feeling sad or depressed. he reports he has been taking his medication now but he stopped taking it for a while his oral medications.

At this time suicidal assessment was done and he denies adamantly any suicidal ideations intent or plan he is hopeful and reporting that he is talking to a girl who can be potentially a girlfriend. He is sleeping good and appetite is fine. No alcohol or illicit drugs. He reports he wants to be there for his grandmother. He agreed to come back next week for the appointment.

Mental Status Examination:

Alert and oriented x 3

Speech : Normal rate and rhythm and volume

Gait: Steady

Mood: "fine"

Affect: full range and reactive

Thought process: Linear

Thought content: ideas of reference
SI/HI: Denies suicidal or homicidal ideations intent or plan
insight: fair
Judgment fair
memory: grossly intact recent and remote

*Id.* at 27-28.

These records clearly reflect that Claimant was not free of mental health symptoms, but they do not demonstrate that the ALJ failed to recognize and consider Claimant's continuing symptoms or that she mischaracterized the record in any way.  Rather, the ALJ expressly noted the following:

> There is medical evidence that is consistent with the claimant's allegations.  He has sought treatment for symptoms such as social anxiety, excessive worry, depression, insomnia, and poor concentration  (Ex. 3F/4; 8F/35, 39; 13F/13; 16F/10).  He has a history of manic episodes, during which he would go days without sleeping and engage in impulsive behavior.  In the year prior to the alleged onset date, he was hospitalized for bipolar mania and psychosis (Ex. 2F/3; 3F/4). His psychotic symptoms have surfaced at times since the alleged onset date; they consist of paranoid feelings of being watched or judged, and hearing voices or believing that the television is sending him messages (Ex. 3F/4; 13F/13; 16F/26, 33).  On a few occasions, the claimant has exhibited a flat affect, anxious mood, or tangential speech in psychiatric appointments (Ex. 3F/6-7; 16F/12, 18).

[Dkt. 10-2 at 22.]   As the Claimant notes, "SSR 16-3p requires the ALJ to consider 'the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and

other relevant evidence in the case record.'"  [Dkt. 14 at 17-18] (quoting SSR 16-3p, at *4, and citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)).  That is precisely what the ALJ did in this case.  In light of the entire record, which the ALJ carefully examined, the ALJ determined that Claimant's continuing symptoms were not disabling.  This conclusion is supported by substantial evidence.  As noted above, the Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester*, 920 F.3d at 510.  The Court must decline Claimant's invitation to do so here.

### B.  RFC Determination

Claimant next argues that the ALJ failed to adequately support her RFC determination. Specifically, Claimant argues that the ALJ failed to account for the moderate limitations in concentration, persistence, or pace that the ALJ found.  In so arguing, Claimant relies on the plethora of cases from the Seventh Circuit that hold that "generically confining claimants to 'routine tasks and limited interactions with others' might not adequately capture a claimant's limitations" in concentration, persistence, or pace.  *Jozefyk*, 923 F.3d at 498; *see also Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Varga*, 794 F.3d at 809; *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

On this issue, however, this case is virtually identical to that of *Burmester*, 920 F.3d at 511.  In *Burmester*, the ALJ found that the claimant had moderate difficulties in her ability to sustain concentration, persistence, or pace, and the claimant argued that the ALJ's limitation in his RFC finding that claimant was "mentally limited to simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public" failed to account for those difficulties.  The Seventh Circuit disagreed, noting the following:

13

It is well-established that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga*[, 794 F.3d at 813] (quoting *Yurt*[, 758 F.3d at 857]. However, an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (citing *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question [to the VE] be supported by the medical evidence in the record.")).

Here, the ALJ gave great weight to the opinion of Dr. Jeremy Meyers, who stated in the "Statement of Work Capacity" portion of his assessment that Burmester had the "ability to understand, remember and carry out simple instructions subject to physical limitations," that "maintaining concentration and attention should be manageable" and that she "should be able to withstand routine work stress and adapt to typical job site changes." These limitations were given to the vocational expert.  The ALJ gave the VE the hypothetical of a person "limited to simple, routine, repetitive tasks which would require only simple work-related decision making and would require few changes in the routine work setting with no more than occasional interaction with supervisors, coworkers, and the general public."

*Burmester*, 920 F.3d at 511.

In this case, the ALJ found persuasive and well-supported the opinions of the state agency consulting psychologists, who found the following:

The evidence suggests that claimant can understand, remember, and carry-out semi-skilled tasks.  The claimant can relate on an ongoing basis with co-workers and supervisors. The claimant can attend to task for sufficient periods of time to complete tasks.  The claimant can manage the stresses involved with semi-skilled work.

[Dkt. 10-3 at 24.]  The opinion of Claimant's treating mental health counselor, Nicholas Fuller, which the ALJ also found to be persuasive, is consistent with that of the state agency consultants.

*See* [Dkt. 10-7 at 309.]  The ALJ's RFC and relevant hypothetical question to the vocational expert limited Claimant as follows:  "He can understand, remember, and carry out simple, routine, repetitive tasks and make simple work-related decisions.  He can occasionally interact with supervisors and coworkers, and can never interact with the public."  [Dkt. 10-2 at 21, 65.] As in *Burmester*, the ALJ's RFC determination is supported by substantial evidence—the

14

opinions of three medical professionals—and the basis for it was adequately articulated by the

ALJ.[4] Claimant has not demonstrated that remand is appropriate.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **AFFIRMED**.

SO ORDERED.


Dated:  29 NOV 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana


Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

---

[4] Indeed, as the Commissioner notes, Claimant does not point to any contrary medical opinion.

15